UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACY MAKHNEVICH,

                        Plaintiff,

            -against-

MTGLQ INVESTORS, L.P., SELENE FINANCE, L.P,
MARIA SIDERIS,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/14/2020_____

19 Civ. 72 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Stacy Makhnevich, alleges that Defendants—MTGLQ Investors, L.P.

("MTGLQ"), Selene Finance, L.P. ("Selene"), and Maria Sideris—submitted "false and

fraudulent documents" in a state court action seeking to foreclose on her mortgage.  Am. Compl.

¶¶ 6–8, 10, ECF No. 15.  She claims that in doing so, Defendants violated the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, New York General Business Law

§ 349 ("GBL § 349"), and 42 U.S.C. § 1983.  Now before the Court are motions to dismiss filed

by MTGLQ and Selene, ECF No. 36, and by Sideris, ECF No. 41.  For the reasons stated below,

Defendants' motions are GRANTED in part and DENIED in part.

Also before the Court is Plaintiff's motion for an award of service fees under Rule

4(d)(2) of the Federal Rules of Civil Procedure.  ECF No. 10.  For the reasons stated below,

Plaintiff's motion is GRANTED.

**BACKGROUND**

The following facts are taken from the amended complaint and "are presumed to be true

for purposes of considering a motion to dismiss for failure to state a claim."  *Fin. Guar. Ins. Co.

v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).  In addition, the Court has taken

judicial notice of documents filed in the state court foreclosure action against Plaintiff, *MTGLQ*

*Investors, L.P. v. Makhnevich*, No. 523230/17 (N.Y. Sup. Ct. Kings Cty.) (the "State Action").
The Court takes notice of those filings "not for the truth of the matters asserted in the other
litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time
Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

On December 1, 2017, MTGLQ filed a foreclosure action against Plaintiff in New York
state court.  State Complaint, State Action Dkt. 1.  Attached to the complaint were several
supporting documents, including a note and a mortgage, each of which had a signature line
labeled "Stacey Makhnevich."  *Id.* at 19, 38.  Plaintiff alleges that the signature on those lines is
not hers.  Am. Compl. ¶ 43.6.  The security interest also contains a notarized page, on which the
"e" in "Stacey" is crossed out.  New York Complaint at 38.  According to Plaintiff, no notary
was present when she executed the mortgage documents.  Am. Compl. ¶ 43.19.

On December 21, 2017, MTGLQ filed, in the State Action, an affidavit of service from
John Hudak, stating, "On December 18[,] 2017 at 4:26 PM, at 2900 OCEAN AVE APT 4M,
BROOKLYN, NY 11235, deponent served the Summons and Complaint . . . upon Stacy
Makhnevich, Defendant . . . .   Said service was effected in the following manner: **PERSONAL.**"
Affidavit of Service, ECF No. 37-9.  The affidavit described the individual served as "[f]emale,"
"[w]hite" with "[g]ray and [w]hite" hair, between 5'4'' and 5'8'', between 131 and 160 pounds,
and "[o]ver 65."  *Id.*  Plaintiff is 38 years old, and does not match that description.  Am. Compl.
¶ 15.  MTGLQ also filed an affidavit from Hudak explaining that he had not effected service on
the John Does listed in the State Complaint, because "On 12/18/2017 I spoke with Stacy
Makhnevich and she stated that there are no Does."  State Action Dkt. 10 at 5.  But Plaintiff was,
in fact, never served, and never spoke with Hudak.  Am. Compl. ¶¶ 15, 19.

2

At some point thereafter, Plaintiff appeared in the State Action *pro se*, and filed a motion to dismiss. *Id.* ¶ 21. In response, Sideris—an attorney for MTGLQ—filed an affidavit in opposition, which reasserted that Plaintiff had been served, on the basis of Hudak's affidavit. State Action Dkt. 14. Sideris also filed a copy of the Hudak affidavit in support of the opposition. State Action Dkt. 22. Also filed in support of MTGLQ's opposition was an affidavit from a "team lead" at Selene, State Action Dkt. 15, which averred that (1) Selene was a mortgage servicer for MTGLQ, *id.* ¶ 1; (2) a 90-day notice of default was mailed to Plaintiff on July 18, 2017, pursuant to New York law, *id.* ¶¶ 10–12; and (3) the New York Superintendent of Finance was notified of the mailing of the notice within 3 days, *id.* ¶ 13. But Plaintiff never received the notice because the letter containing the notice was not properly addressed; a fact of which Selene was presumably aware, because the letter was promptly returned to Selene as undeliverable. Am. Compl. ¶ 43.13.

On November 29, 2018, the New York state court denied Plaintiff's motion to dismiss, on the grounds that she had not shown that MTGLQ had failed to comply with foreclosure notice requirements, and that Plaintiff was in any event in default. Order on Motion to Dismiss, ECF No. 37-3. Plaintiff then filed a motion to renew, which the state court again denied. Order on Motion to Renew, ECF No. 37-4. However, the court allowed Plaintiff to proceed with defending her case, and extended her time to answer MTGLQ's complaint. *Id.* at 2; *see* Am. Compl. ¶ 26 ("The [c]ourt finally overruled its previous order of 'default with defenses waived' on February 1, 2019 and allowed [Ms.] Makhnevich an opportunity to interpose an answer.").

On January 3, 2019, Plaintiff filed this action. ECF No. 1. On May 14, 2019, MTGLQ and Selene filed a motion to dismiss, ECF No. 36, and Sideris filed a separate motion to dismiss, ECF No. 41.

# ANALYSIS

I.   <u>Motion to Dismiss Standard</u>

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly,* 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint or incorporated in it by reference, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing the suit. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002). The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

Because Plaintiff is *pro se*, the Court must "construe [her] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and alterations omitted). The Court is "obligated to draw the most favorable inferences that [the] complaint supports," although it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

II.   <u>Procedural Issues</u>

A. The *Rooker-Feldman* Doctrine

Defendants assert that the *Rooker-Feldman* doctrine prevents this Court from hearing Plaintiff's suit. MGTLQ Mem. at 6–7, ECF No. 38; Sideris Mem. at 6–8, ECF No. 43. The *Rooker-Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that

are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). "[T]here are four requirements for the application of *Rooker-Feldman*." *Id.* at 85 (2d Cir. 2005).

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* (internal quotation marks and alterations omitted). Because the *Rooker-Feldman* doctrine is jurisdictional, the Court must address this challenge before it can turn to the merits. *See Hachamovitch v. DeBuono*, 159 F.3d 687, 696 n.2 (2d Cir. 1998) ("*Rooker-Feldman* is jurisdictional and cannot [be waived].");* see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) ("[T]he jurisdictional issue must be resolved before the merits issue.").

Decisions of the Second Circuit make it clear that claims like Plaintiff's are not barred by the *Rooker-Feldman* doctrine. The Second Circuit has directly addressed the application of the *Rooker-Feldman* doctrine to a federal court action brought by plaintiffs claiming that their rights were violated as a result of inadequate service and fraudulent filings in a state court foreclosure action. *See Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70, 75  (2d Cir. 2015). The circuit court held that such claims are not barred by the *Rooker-Feldman* doctrine, because "claims sounding under the FDCPA, RICO, and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments." *Id.* at 94–95; *see also, e.g.*, *Gabriele v. Am. Home Mortg. Serv'g, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) (*Rooker-Feldman* doctrine did not bar FDCPA and state unfair trade practices claims arising out of deficient service and fraudulent filings in state court foreclosure

action because the plaintiff "d[id] not complain of injuries *caused* by the state court judgment").[1]
As in those cases, Plaintiff's claims arise out of Defendants' allegedly unlawful actions in
prosecuting the State Action, rather than the resolution of the Action itself.

Accordingly, Defendants' motions to dismiss on the basis of the *Rooker-Feldman*
doctrine are DENIED.

B. Abstention

In their reply brief, MTGLQ and Selene argue for the first time that the Court should
abstain from exercising jurisdiction based on either *Colorado River Water Conservation District
v. United States*, 424 U.S. 800 (1976), or *Younger v. Harris*, 401 U.S. 37 (1971).  MTGLQ Reply
at 4–6, ECF No. 48.  Abstention would not be appropriate under either doctrine.

*Colorado River* abstention applies only in "exceptional circumstances."  *Colorado River*,
424 U.S. at 813 (internal quotation marks and citation omitted).  Under *Colorado River*, "a
federal court may abstain from exercising jurisdiction when parallel state-court litigation could
result in comprehensive disposition of litigation and abstention would conserve judicial
resources."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673
F.3d 84, 100 (2d Cir. 2012).  "In evaluating whether *Colorado River* abstention is appropriate,
federal district courts are to consider six factors, 'with the balance heavily weighted in favor of
the exercise of jurisdiction,'" *id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 16 (1983)), but the "threshold requirement is that the lawsuits be parallel, meaning
that 'substantially the same parties are contemporaneously litigating substantially the same issue

---

[1] Defendants' briefs do not mention, much less distinguish, these cases.  It is disturbing that defense counsel argued
for dismissal on the basis of the *Rooker-Feldman* doctrine without bringing this readily available and controlling
authority to the Court's attention.  "New York Rule of Professional Conduct 3.3(a)(2) . . . requires attorneys to
disclose adverse legal authority in the relevant jurisdiction which is not disclosed by opposing counsel."  *Perez v.
Platinum Plaza 400 Cleaners, Inc.*, No. 12 Civ. 9353, 2015 WL 13402755, at *5 n.9 (S.D.N.Y. June 16, 2015).  The
Court would expect counsel to be particularly mindful of that obligation in a case where their adversary is *pro se*.

in another forum.'" *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017)

(quoting *Dittmer v. Cty. Of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998).  Given the posture of the

State Action, with Plaintiff now permitted to appear and actively litigating, it is quite possible

that the state court will never resolve the issue of whether the affidavit of service is accurate or

fraudulent.  Consequently, the two actions are not parallel, and the Court cannot abstain under

*Colorado River*.  *See Yeboah v. Bank of America, N.A.*, No. 18 Civ. 2020, 2019 WL 3388045, at

*9 (D. Conn. July 26, 2019) (holding that *Colorado River* abstention did not apply to federal

FDCPA action claiming defendants filed false affidavits in ongoing foreclosure action);

*Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 300 n.8 (S.D.N.Y. 2014) (declining to

abstain under *Colorado River* in case where plaintiff claimed defendants' conduct in state debt-

collection action violated the FDCPA, on ground that actions were not parallel).

   As for *Younger* abstention, that doctrine "generally requires federal courts to abstain from

taking jurisdiction over federal constitutional claims that involve or call into question ongoing

state proceedings."  *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

But the Supreme Court has reiterated that "[j]urisdiction existing, . . . a federal court's obligation

to hear and decide a case is virtually unflagging."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69,

77 (2013) (internal quotation marks and citation omitted).  Thus, *Younger* abstention is only

required (and only permitted) in three categories of state court proceedings:  "state criminal

prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that

are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Id.* at

73 (internal quotation marks, citation, and alterations omitted).  The State Action is an ordinary

civil lawsuit between private parties.  There is, therefore, no merit to Defendants' contention that

*Younger* abstention might apply.

Accordingly, MTGLQ and Selene's motion for the Court to abstain from exercising jurisdiction is DENIED.

C. Issue Preclusion

MTGLQ and Selene also argue that all of Plaintiff's claims are barred by the doctrine of issue preclusion (also called collateral estoppel), which "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002); *see* MTGLQ Mem. at 5–6. Courts "give a prior state court decision the same preclusive effect that the courts of that state would give to it," and the Court "therefore look[s] to New York law to determine the effect of" prior proceedings. *Colon v. Coughlin*, 58 F.3d 865, 869 n.2 (2d Cir. 1995) (citations omitted). Under New York law, "a general prerequisite to invocation of . . . collateral estoppel is the existence of a final judgment, i.e., a final judicial determination which necessarily decided the very cause of action or issue that a party now seeks to litigate in a subsequent action or proceeding." *Ott v. Barash*, 491 N.Y.S.2d 661, 668 (N.Y. App. Div. 1985) (citations omitted); *see Chartier v. Martin Mgmt., LLC*, 202 F.3d 89, 95–96 (2d Cir. 2000) (collecting cases).

Here, there has been no final judgment in the State Action. The state court *denied* Plaintiff's motion to dismiss. *See* Order on Motion to Dismiss; Order on Motion to Renew. Under New York law, that denial is not a final judicial determination with preclusive effect. *See Tannenbaum v. Corbis Sygma*, No. 02 Civ. 5066, 2002 WL 31778813, at *2 (S.D.N.Y. Dec. 12, 2002) (applying New York law and declining to apply preclusive effect to a state court's "denial of a motion to dismiss at the pleading stage"). Accordingly, the doctrine of issue preclusion does not apply to bar any of Plaintiff's claims in this action.

III.    Merits

    A.  FDCPA

Plaintiff claims that Defendants made misrepresentations in the State Action that violated the FDCPA.  Am. Compl. ¶¶ 46–52.  The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir. 2001).  Among other requirements, it provides that a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, *id.* § 1692e, and "may not use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f.  To establish a violation of the FDCPA, a plaintiff must satisfy three elements:  (i) the plaintiff must be a "consumer" as defined in 15 U.S.C. § 1692a(3); (ii) the defendant must be a "debt collector" as defined in 15 U.S.C. § 1692a(6); and (iii) the defendant must have committed some act or omission in violation of the FDCPA.  *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013).  Plaintiff alleges that Defendants' filing of a false affidavit of service and false mortgage documents in the State Action was harassing and abusive, constituted false and deceptive representations, and was an unfair or unconscionable means of debt collection.  Am. Compl. ¶¶ 10, 14–15

Defendants argue that the FDCPA does not provide a cause of action for the filing of a false or fraudulent affidavit of service in a foreclosure action.  MTGLQ Mem. at 7; Sideris Mem. at 8–9.  But that contention is contrary to the law of this circuit.  "[D]ebt collectors can be subject to FDCPA liability based on actions taken in legal proceedings," and "mortgage

foreclosure . . . constitutes debt collection under the FDCPA." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 83–84 (2d Cir. 2018).  Plaintiff alleges that she "was never served with the summons and the complaint."  Am. Compl. ¶ 15.  If that allegation is true—and the Court must assume that it is—then the affidavit of service filed by Defendants in the State Action was false.  *Id.* ¶ 14; *see also* Affidavit of Service.  Making a false averment to a court in an effort to obtain a default judgment and foreclose on a mortgage is plainly a violation of the FDCPA. *See Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 583 (S.D.N.Y. 2015) (holding that a plaintiff could survive summary judgment on an FDCPA claim because a jury could believe that defendants filed a false affidavit of service); *Scott v. Greenberg*, No. 15 Civ. 05527, 2017 WL 1214441, at *11 (E.D.N.Y. Mar. 31, 2017) ("[T]he [a]mended [c]omplaint states a claim under section 1692e because [p]laintiff alleges that the physical description included in the affidavit of service does not match her own physical description or the description of anyone living with [p]laintiff at the time of the alleged service.").

Defendants argue in their reply briefs that they cannot be held liable for misrepresentations in the affidavit of service because the FDCPA excludes from the definition of "debt collector" "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt."  15 U.S.C. § 1692a(6)(D); *see* MGTLQ Reply at 7; Sideris Reply at 6.  But § 1692a(6)(D) "exempt[s] from liability under the FDCPA those individuals whose involvement in a debt collection communication was limited to serving the communication on the consumer—in effect, to being messengers."  *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 117 (2d Cir. 1998).  That protection does not extend to actions "beyond mere service of the notice," *id.* at 118, like filing a false affidavit of service. Indeed, courts in this district have specifically held that "alleged failure to serve plaintiffs

process and provision of perjured affidavits of service remove[s] [defendants] from the exemption."  *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010).

Moreover, Defendants make no argument at all concerning the false or fraudulent mortgage documents Plaintiff claims that they filed in the State Action.  Plaintiff alleges that MTGLQ sought to foreclose on her property based on mortgage documents that she did not execute or authorize.  Am. Compl. ¶ 43.3.  Among other things, she claims that the documents bore some other individual's signature, *id.* ¶ 43.6, and that they were falsely notarized after the fact, *id.* ¶ 43.19.  She also claims that Selene falsely represented that it had complied with New York's requirement to give notice to the debtor and to the superintendent of financial services, *see* N.Y. Real Prop. Acts. Law §§ 1304, 1306, when in fact it had not provided adequate notice. Am. Compl. ¶¶ 43.13, 43.14.  "The . . . filing of form affidavits and other submissions containing false or deceptive representations may—under certain circumstance—give rise to an actionable FDCPA claim."  *Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 447 (S.D.N.Y. 2014). Of course, Plaintiff is required to show that the false statements were material—that is, "whether the false statement[s] would frustrate a consumer's ability to intelligently choose his or her response."  *Cohen*, 897 F.3d at 86.  Fraudulent mortgage documents and false averments of compliance with notice requirements have obvious potential to hamper a debtor's ability to defend a foreclosure action.  And although it is certainly possible that, in context, some or all of the representations Plaintiff relies on were not material, Defendants have made no effort whatsoever to explain why that might be the case.

Accordingly, Defendants' motions to dismiss Plaintiff's FDCPA claim are DENIED.

B.  GBL § 349

Plaintiff claims that Defendants' misrepresentations also violate GBL § 349.  Am.

Compl. ¶¶ 53–60.  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service."  "To state a claim under § 349,

a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was

misleading in a material respect; and (3) the plaintiff was injured as a result."  *Spagnola v.*

*Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). To be consumer oriented, "the gravamen of the

complaint must be consumer injury or harm to the public interest.  The critical question, then, is

whether the matter affects the public interest in New York."  *Securitron Magnalock Corp. v.*

*Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation marks and citations omitted).

"Based on this standard, courts have found sufficient allegations of injury to the public interest

where plaintiffs plead repeated acts of deception directed at a broad group of individuals."  *Moss*

*v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 309 (E.D.N.Y. 2017) (internal quotation marks

and citation omitted).

Defendants argue that Plaintiff has not shown that their actions were consumer-oriented.

MTGLQ Mem. at 8; Sideris Mem. at 9.  The Court agrees.  Plaintiff alleges that Defendants

made false representations in the State Action as part of a scheme directed at her, and her alone.

Courts in this circuit have repeatedly dismissed GBL § 349 claims based on alleged litigation

misconduct as not consumer oriented.  For example, in *Nials v. Bank of America*, a court in this

district held that a GBL § 349 claim based on alleged false representations in a mortgage

foreclosure suit failed because it "concern[ed] a private dispute between [p]laintiffs and

[d]efendants as to the title of a particular piece of property and mortgages and notes relevant to

only the parties of this litigation."  No. 13 Civ. 5720, 2014 WL 2465289, at *3 (S.D.N.Y. May

30, 2014) (collecting cases); *see also e.g.*, *Werner v. Selene Fin., LLC*, No. 17 Civ. 6514, 2019 WL 1316465, at *9 (S.D.N.Y. Mar. 22, 2019) (dismissing GBL § 349 claim arising out of alleged misconduct during the course of foreclosure where "there [were] no facts in the [c]omplaint to permit the [c]ourt to reasonably infer that [defendant's] actions were consumer oriented"); *Rutty v. Krimko*, No. 17 Civ. 6090, 2018 WL 1582290, at *4 (E.D.N.Y. Mar. 30, 2018) (dismissing suit alleging misconduct during foreclosure action as "not consumer oriented within the meaning of § 349" (internal quotation marks omitted)).  This action differs from those cases in the nature of the litigation misconduct alleged, but it does not differ in its focus on the conduct of Defendants in a single case concerning a single mortgage.  "There are no allegations in the [c]omplaint that plead that [d]efendants have engaged in a broad pattern of conduct directed at the consuming public or that this dispute is anything but a disagreement between the parties to this litigation."  *Nials*, 2014 WL 2465289, at *3.

However, "[a] *pro se* complaint is to be read liberally," and the Court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  It is possible that Plaintiff could allege facts that would show that Defendants' "conduct did affect or could affect a larger group of New York consumers," and so was consumer-oriented within the meaning of GBL § 349.  *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779, 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017).  "Numerous courts in the Southern District of New York have held that the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall within the scope of Section 349."  *Id.* (internal quotation marks and citation omitted) (collecting cases).  The Court is obligated to allow Plaintiff an

opportunity to amend her complaint to plead facts showing that Defendants are engaged in consumer-oriented conduct—if such facts can be honestly and plausibly alleged.

Accordingly, Defendants' motions to dismiss Plaintiff's GBL § 349 claim are GRANTED without prejudice to Plaintiff's filing an amended complaint.

C.  § 1983

Lastly, Plaintiff alleges that Defendants violated 42 U.S.C. § 1983, which creates liability for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  Am. Compl. ¶¶ 61–66.  "A § 1983 claim has two essential elements:  (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."  *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Defendants argue that Plaintiff has failed to satisfy the state action requirement, because "[i]t is axiomatic that a process server engaged by a private company hired to serve process i[n] a civil lawsuit is not a 'state actor.'" Sideris Mem. at 10; *see* MTGLQ Mem. at 8–9 ("[A]n independent process server was engaged by a private company to serve process in a civil lawsuit. Thus, there is no 'state actor' or other government official involved here.").  Far from being "axiomatic," Defendants' argument is directly contradicted by longstanding precedent.  In *United States v. Wiseman*, the Second Circuit held that private process servers were engaged in "activity which even when performed by a private party constitutes a public function," and so were acting "under color of law" for purposes of 18 U.S.C. § 242, the criminal counterpart to § 1983.  *See* 445 F.2d 792, 798 (2d Cir. 1971) (internal quotation marks omitted).  Following

*Wiseman*, courts in this circuit have consistently concluded that alleged misconduct by process servers, including in foreclosure actions, constitutes state action for purposes of § 1983 as well. *See, e.g.*, *Luciano v. Nassar*, No. 19 Civ. 3180, 2019 WL 6467711, at *2 (E.D.N.Y. Nov. 30, 2019) ("Process servers are state actors for purposes of section 1983."); *Sanchez v. Hoosac Bank*, No. 12 Civ. 8455, 2014 WL 1326031, at *7 (S.D.N.Y. Mar. 31, 2014) ("Under *Wiseman* . . . service is a public function that might give rise to a finding of state action." (internal quotation marks omitted)).

Nonetheless, Plaintiff's § 1983 claim cannot prevail because she has not shown that the fraudulent affidavits of service resulted in a constitutional violation.  "Although service of process fulfills an important due process function, improper service is not a free-standing due process violation."  *Hoosac Bank*, 2014 WL 1326031, at *7.  The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law."  Accordingly, "to state a cause of action under § 1983 arising from improper service, a plaintiff must at least establish that the improper service resulted in some deprivation, for example, by resulting in a default judgment."  *Sanchez v. Abderrahman*, No. 10 Civ. 3641, 2012 WL 1077842, at *8 (E.D.N.Y. Mar. 30, 2012) (collecting cases).  Plaintiff has not alleged that the submission of a fraudulent affidavit of service resulted in such a deprivation.  To the contrary, she admits that "she succeeded at having her default removed and defenses reinstated." Am. Compl. ¶ 40, *see also id.* ¶ 26.  She asserts that the process of contesting the false service caused her emotional distress.  *Id.* ¶¶ 40, 66.  But the Due Process Clause does not protect against the burden of litigation as such.  *See All Aire Conditioning, Inc. v. City of New York*, 979 F. Supp. 1010, 1015 (S.D.N.Y. 1997) (holding that the cost of defending a lawsuit is not a cognizable deprivation under the Due Process Clause), *aff'd*, 166 F.3d 1199 (2d Cir. 1998).

Accordingly, Defendants' motions to dismiss Plaintiff's § 1983 claim are GRANTED.[2]

## IV.   Service Expenses

Plaintiff moves for payment of the expenses incurred in serving MTGLQ and Selene, which did not waive service under Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Costs Mot., ECF No. 10.  Rule 4(d)(2) provides that "[i]f a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court *must* impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expense, including attorney's fees, of any motion required to collect those service expenses" (emphasis added).  Plaintiff avers that she mailed a request for waiver of service to Defendants on January 12, 2019, and that they never provided waivers of service.  Costs Mot. at 2.  Subsequently, Plaintiff served MTGLQ and Selene by serving a summons and complaint on the Secretary of State, pursuant to New York Civil Practice Law and Rules § 310-a and New York Partnership Law § 121-109.  ECF Nos. 8 and 9.  MTGLQ and Selene have not filed any response to Plaintiff's motion.  The Court, therefore, accepts Plaintiff's averments as true, and finds that no "good cause" justified Defendants' failure to return a waiver of service to her.  Accordingly, Plaintiff's motion for costs under Rule 4(d)(2) is GRANTED.

Plaintiff requests $202.54 in service expenses.  Costs Mot. at 2.  The Court cannot assess the reasonableness of that amount without reviewing the costs that Plaintiff incurred.  The Court also notes that Plaintiff "is not entitled to recover attorney's fees as a *pro se* party."  *Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 328 (S.D.N.Y. 2012).  Accordingly, it is

---

[2] The Court is skeptical that Plaintiff could show any harm that would bring her case within the ambit of the Due Process Clause.  Nonetheless, because the ground on which the Court dismisses this claim was not raised by Defendants in their papers, *see generally* MGTLQ Mem. at 8–9; Sideris Mem. at 10, the dismissal must be without prejudice.  *See Hughes v. Anderson*, 449 F. App'x 49, 51 (2d Cir. 2011) ("The district court erred in dismissing [plaintiff's] First Amendment claim with prejudice on a ground not raised by a defendant without giving him notice and opportunity to respond, and without affording him an opportunity to demonstrate that any deficiency in his complaint could be cured in an amended pleading.").

ORDERED that by **March 16, 2020**, Plaintiff shall submit a detailed schedule of the expenses she incurred in making service and the reasonable expenses (but not attorney's fees or their equivalent) that she incurred in making this motion.

## CONCLUSION

For the foregoing reasons, (1) Defendants' motions to dismiss the FDCPA claim are DENIED; (2) Defendants' motions to dismiss the GBL § 349 claim are GRANTED; and Defendants' motions to dismiss the § 1983 claim are GRANTED.  Plaintiff's GBL § 349 and 42 U.S.C. § 1983 claims are DISMISSED without prejudice.

Plaintiff may wish to proceed on the surviving FDCPA claim, or she may wish to file an amended complaint containing additional allegations in support of the GBL § 349 and 42 U.S.C. § 1983 claims.  If Plaintiff wishes to file an amended complaint, she must do so by **March 16, 2020.**

Plaintiff's motion for costs of service under Rule 4(d)(2) of the Federal Rules of Civil Procedure is GRANTED.  By **March 16, 2020**, Plaintiff shall submit a detailed schedule of the expenses she incurred in making service and the reasonable expenses that she incurred in making the motion for expenses.

The Clerk of Court is directed to terminate the motions at ECF Nos. 10, 36, and 41.  The Clerk of Court is further directed to mail a copy of this order to Plaintiff *pro se*.

SO ORDERED.

Dated: February 14, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge