UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACY MAKHNEVICH,

                    Plaintiff,

      -against-

MTGLQ INVESTORS, L.P., SELENE FINANCE, L.P,
MARIA SIDERIS,

                  Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/2021
```

19 Civ. 72 (AT) (SN)

**ORDER**

ANALISA TORRES, District Judge:

      Plaintiff *pro se*, Stacy Makhnevich, alleges that Defendants, MTGLQ Investors, L.P. ("MTGLQ"), Selene Finance, L.P. ("Selene") (together, the "Corporate Defendants"), and Maria Sideris, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, 42 U.S.C. § 1983, and New York General Business Law § 349 ("GBL § 349"), and that Sideris violated the New York Judiciary Law § 487 ("NYJL § 487"). Second Amended Complaint ("SAC"), ECF No. 69. Now before the Court are motions to dismiss filed by the Corporate Defendants, ECF No. 82, and by Sideris, ECF No. 76. For the reasons stated below, Defendants' motions are GRANTED in part and DENIED in part.

      Also before the Court is Plaintiff's motion for leave to amend the SAC and for an order directing the Corporate Defendants to reimburse her for expenses incurred in connection with serving the Corporate Defendants under Federal Rule of Civil Procedure 4(d)(2). Pl. Corp. Def. Opp'n at 23–24, 27–30, ECF No. 90. For the reasons stated below, Plaintiff's motion is GRANTED.

# BACKGROUND[1]

On December 1, 2017, MTGLQ filed a foreclosure action against Plaintiff in Supreme Court, Kings County (the "State Action").  State Complaint, *MTGLQ Investors, L.P. v. Makhnevich*, No. 523230/17 (N.Y. Sup. Ct. Kings Cty.), Dkt. 1.  Attached to the state complaint were several supporting documents, including a note (the "Putative Note") and a mortgage between JP Morgan Chase Bank, N.A., as creditor, and "Stacy Makhnevich", as debtor (together, the "Putative Mortgage Documents").  *Id.* at 17, 21.  Each document features a signature line labeled "Stacey Makhnevich".  *Id.* at 19, 38.  Plaintiff alleges that the signature on those lines is not hers.  SAC ¶ 43.6.  The mortgage also contains a notarization, in which, in the text stating the name of the person who appeared before the notary, the "e" in "Stacey" is crossed out, and "Stacy Makhnevich" substituted in its place.  State Complaint at 39.  According to Plaintiff, no notary was present when she executed the documents.  SAC ¶ 43.19.  In addition, the Putative Mortgage Documents include records of transfer of her mortgage from JP Morgan to the Federal National Mortgage Association ("FNMA"), and from FNMA to MTGLQ.  State Complaint at 43–49.  Plaintiff disputes the authenticity of these transfer documents.  SAC ¶¶ 43.1–43.4, 43.18–43.20.

On December 21, 2017, in the State Action, MTGLQ filed an affidavit of service from John Hudak, stating, "On Dec[ember] 18[,] 2017 at 04:26 PM, at 2900 OCEAN AVE APT 4M, BROOKLYN, NY, 11235, deponent served the Summons and Complaint . . . upon Stacy Makhnevich, Defendant . . . . Said service was effected in the following manner: **PERSONAL.**"  Affidavit of Service, State Action Dkt. 9, ECF No. 79-11.  The affidavit describes the individual

---

[1] The following facts are taken from the complaint and other documents on which the Court can rely, *see infra* § II.B, and accepted as true for the purposes of this motion.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

served as "[f]emale," "[w]hite" with "[g]ray [a]nd [w]hite" hair, between 5'4'' and 5'8'',

between 131 and 160 pounds, and "[o]ver 65." *Id.*  Plaintiff is 38 years old, and does not match

that description.  SAC ¶ 15.  MTGLQ also filed an affidavit from Hudak explaining that he had

not effected service on the John Does listed in the state complaint, because "On 12/18/2017 I

spoke with Stacy Makhnevich and she stated that there are no Does."  State Action Dkt. 10 at 5.

But, Plaintiff was, in fact, never served, and never spoke with Hudak.  SAC ¶¶ 15, 19.

Instead, Plaintiff learned about the State Action on January 6, 2018, from third party

attorneys advertising their services.  *Id.* ¶ 15, Ex. A.  On January 7, 2018, Plaintiff appeared in

the State Action and filed a motion to dismiss for failure to comply with New York foreclosure

notice requirements, and, in an "addendum to the motion," for "not follow[ing] the procedure for

proper service of process and engag[ing] in improper service."  State Action Dkt. 26 at 2–20;

SAC ¶ 21.  In response, Sideris—an attorney for MTGLQ—filed an affirmation in opposition,

stating that Plaintiff had been served as described in Hudak's affidavit.  SAC ¶ 22; State Action

Dkt. 14.  In addition, Sideris filed a copy of the Hudak affidavit.  State Action Dkt. 22.  Also

filed in support of MTGLQ's opposition was an affidavit from a "[t]eam [l]ead" at Selene, State

Action Dkt. 15, which states that (1) Selene was a mortgage servicer for MTGLQ, *id.* ¶ 1; (2) a

90-day notice of default was mailed to Plaintiff on July 18, 2017, pursuant to New York law, *id.*

¶¶ 10–12; and (3) the New York Superintendent of Finance was notified of the mailing of the

notice within 3 business days, *id.* ¶ 13.  But, Plaintiff never received the notice because the

notice was not properly addressed; a fact of which Selene was presumably aware, because the

envelope containing the notice was promptly returned to Selene as undeliverable.  SAC ¶ 43.13.

On November 29, 2018, the New York state court denied Plaintiff's motion to dismiss,

on the ground that she had not shown that MTGLQ had failed to comply with foreclosure notice

requirements, and that, in any event, Plaintiff was in default.  State Action Dkt. 26 at 1; ECF No. 79-2.  Plaintiff then filed a motion to renew, which the state court again denied, reasoning that Plaintiff's new facts presented—the fraudulent affidavit of service—would not have changed the court's prior determination, holding that because she "moved to dismiss on the sole ground that she was not served with a 30-day notice of default (and not on the ground of lack of personal jurisdiction), the new facts are irrelevant."  State Action Dkt. No. 53; ECF No. 79-3.  However, the court allowed Plaintiff to proceed with defending her case, and extended her time to answer MTGLQ's complaint.  *Id.* at 2; *see* SAC ¶ 26 ("The [c]ourt finally overruled its previous order of 'default with defenses waived' on February 1, 2019 and allowed [Ms.] Makhnevich an opportunity to interpose an answer.").

On January 3, 2019, Plaintiff filed this action.  ECF No. 1.  On May 14, 2019, the Corporate Defendants filed a motion to dismiss, ECF No. 36, and Sideris filed a separate motion to dismiss, ECF No. 41.  On February 14, 2020, this Court granted Defendants' motions to dismiss Plaintiff's GBL § 349 and § 1983 claims, denied the motion to dismiss her FDCPA claim, and granted Plaintiff leave to file a second amended complaint (the "Dismissal Order").  Dismissal Order, ECF No. 57.  On August 17, 2020, Plaintiff filed a second amended complaint, reasserting her FDCPA claim, bolstering her § 1983 and GBL § 349 claims with additional allegations, and adding a claim against Sideris under NYJL § 487.  SAC.

On September 21, 2020, Sideris filed a motion to dismiss,[2] ECF No. 76, and on September 22, 2020, the Corporate Defendants filed a separate motion to dismiss, ECF No. 82.

---

[2] Sideris' motion states that she is moving under Rule 12(c) for a judgment on the pleadings.  She concedes this is in error, as a party cannot move under Rule 12(c) before the pleadings have closed, and therefore requests that the Court consider her motion under Rule 12(b)(6).  Sideris Reply at 1–2, ECF No. 94.  Thus, the Court construes Sideris' motion as one under 12(b)(6).  *Ezra v. Bristol-Myers Squibb Co.*, 784 F. App'x 48, 49 (2d Cir. 2019).

## DISCUSSION

### I.    Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Because Plaintiff is *pro se*, the Court must "construe [her] complaint liberally and interpret it to raise the strongest arguments that it suggests."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quotation marks and alterations omitted).  The Court is "obligated to draw the most favorable inferences that [the] complaint supports," although it "cannot invent factual allegations that [the plaintiff] has not pled."  *Id.*

### II.    Procedural Issues

#### A.    Timeliness of Arguments

Plaintiff argues that any of Defendants' arguments that could have been raised in the first motion to dismiss are untimely under Federal Rule of Civil Procedure 12(g)(2).  Pl. Corp. Def. Opp'n at 6–7; Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").  However, "an amended complaint ordinarily renders the original complaint of no legal effect.  It is as though the original complaint was never served."

*Wright v. City of New York*, No. 18 Civ. 10769, 2019 WL 2869066, at *3 n.6 (S.D.N.Y. July 2,

2019) (quoting *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002)

(alteration omitted)).  Although a defendant may waive objections such as "lack of personal

jurisdiction, improper venue, insufficiency of process and insufficiency of service" by failing to

raise them in an initial 12(b) motion, it does not similarly waive arguments that seek "to achieve

judicial resolution of the controversy, not to foreclose it," such as those presented by Defendants.

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Accordingly, Defendants'

second motions to dismiss are not untimely under Rule 12(g).

> B.     Consideration of Extrinsic Evidence

Defendants request that the Court consider certain state court filings, including the

Putative Mortgage Documents, not attached to the SAC.  Corp. Def. Mem. at 2, ECF No. 83;

Sideris Reply at 2–5, ECF No. 94.  Plaintiff objects.[3]  Pl. Corp. Def. Opp'n at 24–27; Pl. Sideris

Opp'n at 16–27, ECF No. 91.

On a motion to dismiss, a district court may consider "the facts alleged in the complaint,

documents attached to the complaint as exhibits, and documents incorporated by reference in the

complaint," as well as documents "where the complaint relies heavily upon its terms and effect,

thereby rendering the document integral to the complaint."  *DiFolco v. MSNBC Cable L.L.C.*,

622 F.3d 104, 111 (2d Cir. 2010) (quotation marks and citations omitted).  However, "even if a

document is integral to the complaint," a court cannot consider it unless it is "clear on the record

---

[3] Plaintiff also objects to the Corporate Defendants' incorporation by reference of a declaration filed by Sideris' lawyer and its exhibits, and certain State Action and alleged mortgage documents.  Pl. Corp. Def. Opp'n at 24–27. The Court interprets this objection as reiterating Plaintiff's argument that the documents are fraudulent and should not be considered on a motion to dismiss.  *See id.* at 26 (arguing that the documents and declaration are fraudulent, and so concluding that, "Plaintiff is prejudiced and objects to the [the declaration] in its entirety.  Plaintiff objects to Defs 'incorporation by reference' of Sideris Memo and [the declaration].").  Accordingly, the Court rules on it below.

that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (quotation marks and citation omitted).

Here, Defendants present two types of extrinsic evidence.  First, they include filings in the State Action, such as the state complaint, affidavit of service, and dismissal orders.  The Court may take judicial notice of state court filings "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991); *see also* Dismissal Order at 2–3.

In addition to these documents, however, are the Putative Mortgage Documents.  Sideris Reply at 2–5.  Although Plaintiff cites them in the complaint, and in fact includes many of them as exhibits to the SAC, *see* SAC at 44–90, it is clear that she strongly disputes their authenticity, and presents them not for their truth, but for the fact of such documents being filed in state court.  Pl. Sideris Opp'n at 16–27.  Therefore, the Court cannot consider them for the truth of the matters asserted.  *Fed. Ins. Co. v. Gander & White Shipping, Inc*., No. 19 Civ. 7209, 2020 WL 3833408, at *2 (S.D.N.Y. July 8, 2020).[4]

Sideris argues that because Plaintiff paid her mortgage for eight years, she has ratified its existence, and therefore cannot dispute its authenticity.  Sideris Mem. at 2–4, ECF No. 77; Sideris Reply at 2–5.  However, this misconstrues Plaintiff's argument.  Plaintiff does not deny that she entered into a mortgage.  SAC ¶ 43.19.  Rather, she contests the authenticity of the Putative Note, and the authenticity of the documents memorializing the purported transfer of the

---

[4] Plaintiff notes in addition that Defendants did not serve her with the notice required by Local Rule 12.1.  Pl. Corp. Def. Opp'n at 5–6; Local Rule 12.1 ("A represented party moving to dismiss or for judgment on the pleadings against a party proceeding *pro se*, who refers in support of the motion to matters outside the pleadings as described in Fed. R. Civ. P. 12(b) or 12(c), shall serve and file the following notice with the full text of Fed. R. Civ. P. 56 attached at the time the motion is served.").  However, where, as here, such a notice was not required to make a *pro se* plaintiff aware of her rights—such as when she is the one who raises it in an opposition—and no other reason for prejudice is presented, a lack of notice is not fatal to the motion to dismiss.  *Francis v. Accubanc Mortg. Corp*., No. 19 Civ. 902, 2020 WL 2086038, at *6 (S.D.N.Y. Apr. 30, 2020), *reconsideration denied*, No. 19 Civ. 902, 2021 WL 827123 (S.D.N.Y. Mar. 4, 2021).

mortgage to MTGLQ.  *Id.* ¶¶ 43.1–43.4, 43.18–43.20; Pl. Sideris Opp'n at 23–25.  Therefore, even if Plaintiff paid a mortgage for eight years, it does not necessarily follow that she paid on the Putative Note.  Moreover, even on Defendants' account, Plaintiff has been in default since October 2015, Sideris Mem. at 2, and Defendants did not acquire the Putative Note until July 2017, Sideris Mem. at 7.  Therefore, Plaintiff has never paid the Corporate Defendants on the Putative Note, and, therefore, has never ratified it or the other associated contested documents.  And finally, the fact of the payments is itself extrinsic evidence, and cannot be considered at the motion to dismiss stage.  *See* Pl. Sur-Reply at 3, ECF No. 98 (disputing the fact of the payments).

The Court also rejects Sideris' argument that Plaintiff's failure to offer an explanation for how she financed the purchase of the real property implies that she incorporated by reference or relied on the Putative Note.  Sideris Reply at 3–4.  Again, Plaintiff does not dispute that she entered into a mortgage; she is disputing the authenticity of the Putative Note and assignment documents offered by Defendants in the State Action.  Therefore, the SAC does not incorporate or rely on the Putative Note, and the Court will not consider it for its truth.

III.   FDCPA Claim

   A.   Corporate Defendants

Plaintiff claims that Defendants made misrepresentations in the State Action that violated the FDCPA.  SAC ¶¶ 43–51.  The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights."  *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001).  Among other requirements, it provides that a debt collector "may not engage in any conduct the natural consequence of which

is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, *id.* § 1692e, and "may not use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. To establish a violation of the FDCPA, a plaintiff must satisfy three elements: (1) the plaintiff must be a "consumer" as defined in 15 U.S.C. § 1692a(3); (2) the defendant must be a "debt collector" as defined in 15 U.S.C. § 1692a(6); and (3) the defendant must have committed some act or omission in violation of the FDCPA. *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013).

Plaintiff alleges that Defendants' filing of a false affidavit of service and false Putative Mortgage Documents in the State Action was harassing and abusive, constituted false and deceptive representations, and was an unfair or unconscionable means of debt collection. SAC ¶¶ 10, 14–15, 25, 28, 31, 43–47. In the Dismissal Order, the Court rejected Defendants' arguments that Plaintiff's FDCPA claim failed because filing a false affidavit of service could not give rise to an FDCPA cause of action, and because Defendants were exempted from the definition of "debt collectors" under the exclusion for those "serving or attempting to serve legal process." Dismissal Order at 9–11. Now, the Corporate Defendants move to dismiss on the basis that they are "creditors" rather than "debt collectors" under the FDCPA.

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). Plaintiff alleges MTGLQ is a debt collector that "buys thousands of allegedly defective and/or delinquent mortgages," and Selene is a debt servicer that "principally and regularly collects debts and attempts to collect

debts in New York."  SAC ¶¶ 6, 7, 82.  She also alleges MTGLQ has filed over a thousand debt collection lawsuits since 2017.  *Id.* ¶ 67.  These allegations, though bare, are sufficient to allege that the Corporate Defendants are "primarily in the business of collecting debt."  *Stinson v. Houslanger & Assocs., PLLC*, No. 18 Civ. 11350, 2020 WL 5569582, at *5–6 (S.D.N.Y. Sept. 17, 2020).

Carved out from the definition of a debt collector, though, is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  *Id.* § 1692a(6)(F).  Therefore, a creditor—one collecting on a debt owed to them—or a loan servicer acting on a creditor's behalf is generally not a debt collector.  *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16 Civ. 9945, 2019 WL 2647598, at *7 (S.D.N.Y. June 27, 2019), *aff'd sub nom. Johnson-Gellineau v. Stiene & Assocs., P.C.*, 837 F. App'x 8 (2d Cir. 2020).  However, "one who acquires debt merely for collection purposes is acting more like a debt collector than a creditor."  *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868, 2011 WL 4344044, at *10 (S.D.N.Y. Sept. 8, 2011) (quotation marks omitted).  Accordingly, if an entity acquires a debt after the debt goes into default, the entity is considered a debt collector.  *Id.*; *Zirogiannis v. Dreambuilder Invs. LLC*, 782 F. Supp. 2d 14, 19 (E.D.N.Y. 2011).  Similarly, "[a] loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status."  *Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir. 2019).

Corporate Defendants argue that because Plaintiff challenges the existence of the default in the SAC, she fails to allege that Defendants are debt collectors rather than creditors—in other words, she cannot be alleging that they acquired a debt after it went into default when she

maintains that the debt does not exist.  Corp. Def. Mem. at 5–6.  It appears that the Second

Circuit has not addressed a situation in which the alleged debtor challenges the existence of the

debt itself.  However, the Sixth Circuit confronted this issue in *Bridge v. Ocwen Fed. Bank, FSB*,

when considering a case in which the plaintiff disputed that their debt had been assigned.  681

F.3d 355, 360–63 (6th Cir. 2012).  The Sixth Circuit, based on the purpose and legislative history

of the FDCPA, determined that "a debt holder or servicer is a debt collector when it engages in

collection activities on a debt that is not, as it turns out, actually owed."  *Id.* (noting that the

defendants' argument to the contrary is "exemplary of an unsettling trend in FDCPA claims.

Defendants seek to have it both ways: after having engaged in years of collection activity

claiming a mortgage is in default, [d]efendants now seek to defeat the protections of the FDCPA

by relying on [p]laintiffs' position throughout those years that the mortgage is not in default.").

The Court agrees with the Sixth Circuit.  "[B]ecause the FDCPA is primarily a consumer

protection statute . . . we must construe its terms in liberal fashion to achieve the underlying

Congressional purpose."  *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)

(quotation marks and citation omitted).  Moreover, the FDCPA was intended to "eliminate the

recurring problem of debt collectors dunning the wrong person."  *Bodur v. Palisades Collection,

LLC*, 829 F. Supp. 2d 246, 251–52 (S.D.N.Y. 2011) (quoting S. Rep. No. 95–382, at 4, reprinted

in 1977 U.S.C.C.A.N. at 1699).  Permitting an alleged debtor harassed in error no recourse under

the FDCPA would violate that Congressional purpose.  *Bridge*, 681 F.3d at 361 ("FDCPA

coverage is not defeated by clever arguments for technical loopholes that seek to devour the

protections Congress intended.").

The Court recognizes that the Second Circuit has, when ruling on the difference between

a debt that is merely due and a debt that is in default, indicated that default begins when the debt

11

servicer informs the debtor of the default.  *See Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 88 (2d Cir. 2003) (determining that "the classification of debt collector depends upon the status of a debt [as owed or in default], rather than the type of collection activities used."); *Papetti v. Does 1-25*, 691 F. App'x 24, 27 (2d Cir. 2017) (affirming the district court's conclusion that "the debt could not be 'due'—let alone 'in default'—until, at a bare minimum, the debt had been identified by the creditor or its agent and made known to the debtor."). However, in those instances, there was no dispute over the existence of the debt itself, or that it was owed to the defendants, merely its status.  In *Alibrandi*, moreover, the Second Circuit held that if an entity "in effect declared [the] debt to be in default," then the court would consider it in default.  333 F.3d at 83.  Here, construing Plaintiff's complaint liberally, she alleges that Defendants declared the debt in default upon acquiring it, and acted accordingly.  SAC ¶¶ 43.9, 43.14 (noting that Corporate Defendants reported beginning foreclosure proceedings by July 19, 2017, merely days after they purport to have acquired the debt).

In fact, the State Action documents and Putative Mortgage Documents attached as exhibits to the SAC demonstrate that Defendants claimed that MTGLQ acquired the debt when it was already in default.  The notice of assignment filed in the State Action states that the debt was assigned to MTGLQ on July 7, 2017.  SAC Ex. H at 2, ECF No. 69 at 80.  However, in the state complaint, Defendants allege that Plaintiff has been in default since October 1, 2015.  State Compl. ¶ 7; *see also* SAC Ex. J at 3, ECF No. 69 at 89 (noting that on July 18, 2017, Defendants considered Plaintiff 655 days in default).  Therefore, according to Defendants, MTGLQ acquired the debt nearly two years after it went into default.  Moreover, Selene purports to have stated to Plaintiff in its letter notifying her of the default that it was a debt collector, SAC Ex. J at 3, ECF No. 69 at 90, which "is strongly indicative that a debt was in default."  *Panzer v. Alternative*

*Claims Mgmt., LLC*, No. 15 Civ. 5383, 2016 WL 3771251, at *2 (S.D.N.Y. July 8, 2016); *Hooks*

*v. Forman Holt Eliades & Ravin LLC*, No. 11 Civ. 2767, 2015 WL 5333513, at *12 (S.D.N.Y.

Sept. 14, 2015) ("Although *Alibrandi* did not hold that the mere use of a 'debt collector'

disclaimer automatically transforms a person into a debt collector for purposes of the FDCPA, it

does direct the court to consider the disclaimer in the totality of facts of each particular case.").

Because the Court concludes that Plaintiff has adequately alleged that the Corporate

Defendants are debt collectors for the purposes of the FDCPA, the Corporate Defendants'

motion to dismiss Plaintiff's FDCPA claim is DENIED.

> B.     Sideris

Sideris notes that, contrary to the Court's observation in the Dismissal Order that

"Defendants make no argument at all concerning the false or fraudulent mortgage documents

[Plaintiff claims that they filed in the State Action]," she attempted to make an argument

regarding the Putative Mortgage Documents and their materiality in her reply brief.  Sideris

Mem. at 4, 17–18 (quoting Dismissal Order at 11).  The Court interprets this as a motion for

reconsideration of the Dismissal Order.

A court may reconsider a prior non-final decision.  *Official Comm. of Unsecured*

*Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

However, a motion for reconsideration must be made within fourteen days of the original order,

Loc. Civ. Rule 6.3; Sideris' motion, filed over seven months after the Dismissal Order, is,

therefore, untimely.  Moreover, there was no clear error in the Court's earlier decision.  Sideris

does not mention her argument on materiality in her motion to dismiss, *see* ECF No. 51, and thus

the Court properly declined to consider it.  *Haywin Textile Prods., Inc. v. Int'l Fin. Inv.*, 137 F.

Supp. 2d 431, 434 n.2 (S.D.N.Y. 2001) (citing *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir. 1999)).

Similarly, although Sideris mentions this discrepancy in her motion to dismiss brief, she notes that "relief may not be available on this motion pursuant to that cause of action." Sideris Mem. at 18.  She also does not list the FCDPA claim among the claims she requests the Court dismiss. *Id.* at 1, 18 (requesting the Court dismiss Counts II, III, and IV).  It is not until her reply that she states, "perhaps . . . this Court can consider the viability of Plaintiff's FDCPA claims on this application."  Sideris Reply at 8.  As the request to dismiss was not raised in her motion to dismiss, the Court cannot consider it now.  *Haywin Textile Prods., Inc.*, F. Supp. 2d at 434 n.2.

IV.     Section 1983 Claim

Plaintiff alleges that Defendants violated 42 U.S.C. § 1983, SAC ¶¶ 100–104, which creates liability for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983.  "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Defendants move to dismiss Plaintiff's § 1983 claims for two reasons.  First, Sideris argues that the Court erred in its prior determination that Plaintiff sufficiently alleged state action.  Sideris Mem. at 15–16.  However, as stated above, a motion for reconsideration is untimely.  Moreover, Sideris, though rearguing the point, does not identify "an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quotation marks and citation omitted). Accordingly, the Court shall not reconsider its prior determination that Plaintiff has sufficiently alleged state action.

Second, the Corporate Defendants challenge the sufficiency of Plaintiff's allegations of injury. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." Accordingly, "to state a cause of action under § 1983 arising from improper service, a plaintiff must at least establish that the improper service resulted in some deprivation, for example, by resulting in a default judgment." *Sanchez v. Abderrahman*, No. 10 Civ. 3641, 2012 WL 1077842, at *8 (E.D.N.Y. Mar. 30, 2012) (collecting cases). In the Dismissal Order, the Court concluded Plaintiff had not sufficiently established an actionable injury, because her State Action default was ultimately removed and her defenses reinstated, and emotional distress is not a cognizable deprivation. Dismissal Order at 15.

In the SAC, Plaintiff adds allegations that she was "denied her federal statutory right to defend herself in the State lawsuit" when she was "found to be in default in State Court with her defenses waived." SAC ¶¶ 33–34, at 41. These claims merely echo those already alleged in the first amended complaint and deemed by this Court to be insufficient, and do not contradict the Court's conclusion that because Plaintiff's defenses were reinstated, and she was permitted to litigate the State Action, she has not alleged a cognizable injury.

Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 claim is GRANTED.

V.     Section 349 Claim

Defendants also move to dismiss Plaintiff's GBL § 349 claim for deceptive business practices.  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).  To be consumer-oriented, "the gravamen of the complaint must be consumer injury or harm to the public interest.  The critical question, then, is whether the matter affects the public interest in New York."  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (quotation marks and citation omitted).  "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals."  *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 309 (E.D.N.Y. 2017) (citation omitted).

The Court previously dismissed Plaintiff's GBL § 349 claim, concluding that the first amended complaint did not allege consumer-oriented conduct, but permitted Plaintiff to amend the complaint "to plead facts showing that Defendants are engaged in consumer-oriented conduct."  Dismissal Order at 12–14.  The SAC adds allegations that Defendants are engaged in a "chronic, persistent pattern of . . . deceptive filings including but not limited to fraudulent affidavits and affirmations."  SAC ¶¶ 60–61.  Plaintiff further claims that Defendants have a "practice of filing lawsuits without verification if the debt is actually owed or not and filing motions without conducting review nor discovery on disputed debts," *id.* ¶ 62, and specifically that MTGLQ has filed over 800 debt collection lawsuits between 2017 and 2019 in New York State, *id.* ¶ 67.  Courts regularly conclude that allegations of a large number of debt collection

lawsuits and a practice of deceptive behavior capable of repetition in those lawsuits are sufficient to allege consumer-oriented behavior under GBL § 349. *See, e.g.*, *Scott v. Greenberg*, No. 15 Civ. 5527, 2017 WL 1214441, at *16 (E.D.N.Y. Mar. 31, 2017) (finding sufficient allegations that defendant has "filed thousands of lawsuits on behalf [of] putative creditors for the collection of consumer debts, and [that] describe[] a course of debt collection by [the defendant] that, when liberally construed, could be pursued against other consumers . . . [a]lthough Plaintiff does not allege that [the defendant] repeatedly engages in filing fraudulent lawsuits."); *Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743, 752 (N.Y. Dist. Ct. 2013) ("[T]he conduct complained of, at its heart, involves the routine filing of assigned debt lawsuits by plaintiff despite a lack of crucial, legally admissible information or sufficient inquiry into whether the claims are meritorious. When considered together with defendant's allegation that plaintiff's deceptive acts and practices affect the consuming public at large and are not limited to the defendant, the challenged conduct and practices clearly raise issues beyond any private contract disputes." (quotation marks omitted)).

With respect to Sideris, Plaintiff alleges that, in connection with these multiple lawsuits, Sideris "did not meaningfully review the facts underlying the alleged indebtedness or the summons, complaint, and attachments before filing lawsuits on behalf of her clients." SAC ¶¶ 69, 76, 89. Because such action is generic misconduct that is capable of being repeated in multiple lawsuits, this allegation is also sufficient. *See Mayfield v. Asta Funding, Inc*., 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) (finding sufficient allegations that individual attorney defendants "verified and filed complaints against class members without sufficient review" including filing fraudulent affidavits to support improper default judgments).

Accordingly, Defendants' motions to dismiss Plaintiff's GBL § 349 claim are DENIED.

VI.     Section 487 Claim

In her SAC, Plaintiff adds a count alleging that Sideris violated NYJL § 487, which makes civilly liable any "attorney or counselor" who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."  NYJL § 487(1).[5]  SAC ¶¶ 86–99.  To prove a claim under NYJL § 487, a plaintiff must allege that (1) defendant is guilty of deceit or collusion, (2) defendant had an intent to deceive the court or any party, and (3) that there were actual damages caused by the deceit or collusion alleged.  *Bryant v. Silverman*, 284 F. Supp. 3d 458, 471–72 (S.D.N.Y. 2018).  In addition, courts have added two requirements: first, that the deceit is "extreme" or "egregious," *id.*, and second, that, if the NYJL § 487 claim is brought in a lawsuit separate from the one in which the deceit allegedly occurred, the deceit be "merely a means to the accomplishment of a larger fraudulent scheme," *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 710 (S.D.N.Y. 2019).

Plaintiff has set forth all of these elements.  She alleges Sideris' intentional deceit in filing an allegedly fraudulent affidavit of service in the State Action, with knowledge that it was fraudulent, and in falsely attesting that Plaintiff had been served with notice of default in compliance with the New York Real Property Actions and Proceeding Law § 265-a.  SAC

---

[5] Sideris argues that because adding this claim exceeds the scope of the Court's permission to amend, it should be dismissed.  Sideris Reply at 7–8.  "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."  *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012).  However, in those instances, the court either explicitly limited the amendment, or the court had already dismissed the claims at issue and denied leave to amend.  *See, e.g.*, *Masri v. Cruz*, No. 17 Civ. 8356, 2019 WL 2388222, at *3 (S.D.N.Y. June 6, 2019); *Miles v. City of New York*, No. 14 Civ. 9302, 2018 WL 3708657, at *5 (S.D.N.Y. Aug. 3, 2018); *Miles*, No. 14 Civ. 9302, ECF No. 90 at 3.  In the Dismissal Order, the Court affirmatively granted Plaintiff permission to amend her § 1983 and GBL § 349 claims, Dismissal Order at 12–14, 16 n.2, but stated that "Plaintiff . . . may wish to file an amended complaint containing additional allegations in support of the GBL § 349 and 42 U.S.C. § 1983 claims.  If Plaintiff wishes to file an amended complaint, she must do so by March 16, 2020," *id.* at 17.  The Court, cognizant that Plaintiff is *pro se*, concludes that this language does not explicitly confine the scope of Plaintiff's amendment enough to foreclose Plaintiff from adding another claim in addition to bolstering her § 1983 and GBL § 349 claims.  However, Plaintiff is warned to conform her filings strictly to the Court's orders.

¶¶ 45–47, 93, 95, 97–98; State Action Dkt. 14 ¶ 12.  Plaintiff further claims that Sideris regularly

files such false documents.  SAC ¶¶ 69, 89, 97–98.  Courts have found that allegations of regular

filings of false affidavits are enough to state a plausible NYJL § 487 claim based on chronic and

extreme patterns of behavior that constitutes egregious deceit.  *Carroll v. U.S. Equities Corp*.,

No. 18 Civ. 667, 2019 WL 4643786, at *14 (N.D.N.Y. Sept. 24, 2019); *Diaz v. Portfolio*

*Recovery Assocs., LLC*, No. 10 Civ. 3920, 2012 WL 661456, at *15 (E.D.N.Y. Feb. 28, 2012),

*report and recommendation adopted*, No. 10 Civ. 3920, 2012 WL 1882976 (E.D.N.Y. May 24,

2012); *Sykes v. Mel Harris & Assocs*., LLC, 757 F. Supp. 2d 413, 428–29 (S.D.N.Y. 2010).

Similarly, claims of this sort are considered parts of larger fraudulent schemes, making claims in

separate lawsuits permissible.  *Michelo*, 419 F. Supp. 3d at 714 ("Plaintiffs' allegations that

[d]efendants operated a widespread scheme to fraudulently obtain default judgments in debt

collection proceedings fits squarely within this exception.").

Moreover, Plaintiff has alleged damages.  In *Amalfitano v. Rosenberg*, the New York

Court of Appeals held that damages in a NYJL § 487 claim can consist of the costs of defending

a litigation, reasoning that,

> [w]hen a party commences an action grounded in a material misrepresentation of
> fact, the opposing party is obligated to defend or default and necessarily incurs legal
> expenses.  Because, in such a case, the lawsuit could not have gone forward in the
> absence of the material misrepresentation, that party's legal expenses in defending
> the lawsuit may be treated as the proximate result of the misrepresentation.

903 N.E.2d 265, 269 (N.Y. 2009).  Here, contrary to Plaintiff's allegations, Sideris did not sign

the state complaint; she authored an affirmation in response to Plaintiff's motion to dismiss.

State Compl.; State Action Dkt. 14.  However, in that affirmation, Sideris alleges that Plaintiff

had been served with a notice of default pursuant to N.Y. Real Property Actions and Proceedings

Law § 1303, State Action Dkt. 14 ¶¶ 12–13, which Plaintiff now alleges is false, SAC ¶ 45.  If

Plaintiff is correct, as the Court must assume, then the State Action would be required to be dismissed.  *Nationstar Mortg., LLC v. Gayle*, 191 A.D.3d 1003 (N.Y. App. Div. 2021) ("Proper service of an RPAPL 1303 notice is a condition precedent to the commencement of a foreclosure action, and noncompliance mandates dismissal of the complaint").  The State Action would not have gone forward in the absence of Sideris' alleged misrepresentation.  Because Plaintiff claims that she has incurred costs in litigating the State Action, SAC ¶ 79, she has properly alleged damages.

Accordingly, Sideris' motion to dismiss Plaintiff's NYJL § 487 claim is DENIED.

VII.    Motion to Amend

In addition, Plaintiff requests to amend her complaint under Federal Rule of Civil Procedure 15.  Pl. Corp. Def. Opp'n at 27–30.  She states that since filing the SAC, Defendants have engaged in additional "deceptive misrepresentation" which creates liability under the FDCPA and GBL § 349.  *Id.* at 29.  Specifically, on October 3, 2019, MTGLQ's attorney filed a notice indicating that the loan servicer was changing from Selene to SN Servicing, Inc.  *Id.*; State Action Dkt. 108.  Nearly a year later, on September 1, 2020, however, MTGLQ filed a change of attorney notice, which was signed by Selene for MTGLQ, rather than by SN Servicing, Inc. State Action Dkt. 126; Pl. Corp. Def. Opp'n at 29.  Plaintiff alleges that this indicates the change of servicer notice, and/or the change of attorney notice, are fraudulent—yet another attempt by Defendants to mislead her, this Court, and the state court—and that she has suffered damages in contesting the change of servicer.  Pl. Corp. Def. Opp'n at 27–30.

Because these allegations concern conduct that occurred after the filing of the complaint, Rule 15(d) governs.  Under Rule 15(d), "the analysis used to determine whether supplementation is appropriate . . . is identical to the analysis used to determine whether amendment is

appropriate pursuant to Rule 15(a)," that is, "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *Kannuu Pty Ltd. v. Samsung Elecs. Co*., No. 19 Civ. 4297, 2021 WL 195163, at *6 (S.D.N.Y. Jan. 19, 2021) (quotation marks and citations omitted).  It is the non-movant's burden to demonstrate these reasons for denial exist.  *Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, No. 18 Civ. 4903, 2019 WL 3066328, at *9–10 (S.D.N.Y. July 12, 2019), *reconsideration denied*, No. 18 Civ. 4903, 2019 WL 3802096 (S.D.N.Y. Aug. 13, 2019), *aff'd*, 827 F. App'x 149 (2d Cir. 2020), *and aff'd*, 827 F. App'x 149 (2d Cir. 2020).

Defendants have not opposed Plaintiff's motion to amend, *see* Corp. Def. Reply, ECF No. 96; Sideris Reply, and therefore have not carried their burden to demonstrate a reason to deny amendment.  Accordingly, Plaintiff may amend her complaint only to the extent that she may add allegations regarding Defendants' actions around the filing of the change of servicer and change of attorney notices.

VIII.   <u>Service Expenses</u>

Finally, in the Dismissal Order, the Court held that Plaintiff was owed reimbursement of the expenses incurred in serving the Corporate Defendants, because they declined without good cause to waive service.  Dismissal Order at 16–17; Fed. R. Civ. P 4(d)(2) ("If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expense, including attorney's fees, of any motion required to collect those service expenses.").  Plaintiff states that Defendants have not yet reimbursed her.  Pl. Corp. Def. Mem. at 23–24.  However, in the Dismissal Order,

the Court determined it could not "assess the reasonableness of [Plaintiff's proposed] amount without reviewing the costs that Plaintiff incurred," and ordered Plaintiff to file "a detailed schedule of the expenses she incurred in making service and the reasonable expenses." Dismissal Order at 16–17.  Though the Honorable Sarah Netburn granted Plaintiff several extensions, ECF Nos. 62, 65, 68, and Plaintiff states that she served the schedule on Defendants, Pl. Corp. Def. Mem. at 23, she did not submit it to the Court.  Therefore, the Court did not order Defendants to pay a sum certain.  Defendants, therefore, have not violated a court order by failing to reimburse Plaintiff.

However, Plaintiff now states that the schedule filed on the docket at ECF No. 33 is her final schedule of costs.  Pl. Corp. Def. Mem. at 24.  In that schedule, she requests reimbursement for expenses (1) hiring a process server, (2) mailing Defendants the waiver of service and associated documents, and (3) travel to the Southern District of New York to file the completed affidavits of service.  ECF No. 33.  Even after being notified that this schedule was final, Defendants did not object to these costs.  *See* Corp. Def. Reply; Sideris Reply.

The costs of hiring a process server and filing affidavits of service are proper expenses under Rule 4(d)(2).  *U.S. Engine Prod., Inc. v. AGCS Marine Ins. Co*., 783 F. Supp. 2d 507, 508 (S.D.N.Y. 2011); *Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 327–28 (S.D.N.Y. 2012). Expenses incurred in the process for requesting waivers of service, however, are not recompensable.  *Hooda v. W.C.A. Servs. Corp*., No. 11 Civ. 504A, 2011 WL 6019932, at *4 (W.D.N.Y. Nov. 4, 2011), *report and recommendation adopted*, No. 11 Civ. 504A, 2011 WL 6012528 (W.D.N.Y. Dec. 1, 2011).  Accordingly, the Court awards Plaintiff $181.00 for costs associated with effecting service.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss is GRANTED in part and DENIED in part.  Specifically, Defendants' motions to dismiss Plaintiff's FDCPA, GBL § 349, and NYJL § 487 claims are DENIED.  Defendants' motions to dismiss Plaintiff's § 1983 claim are GRANTED.

Plaintiff's request for leave to amend is GRANTED for the limited purpose of adding the specific allegations described in her motion.  By **September 4, 2021**, Plaintiff shall file her third amended complaint.

Plaintiff is further awarded $181.00 for costs associated with effecting service.

The Clerk of Court is directed to terminate the motions at ECF Nos. 76 and 82, and to mail a copy of this order to Plaintiff *pro se*.

SO ORDERED.

Dated: August 4, 2021
       New York, New York

_____
ANALISA TORRES
United States District Judge